IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES YOUNG, | : | |
| *On behalf of himself and similarly* | : | CIVIL ACTION |
| *situated employees*, | : | |
|         Plaintiffs, | : | |
| | : | |
|         v. | : | |
| | : | |
| TRI COUNTY SECURITY | : | |
| AGENCY, INC., | : | No. 13-5971 |
|         Defendant. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                                                **May 7, 2014**

The parties in this Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA") case have agreed to a settlement. The Court previously granted preliminary approval of their agreement. Currently before the Court is Plaintiff's unopposed motion to grant final approval of the agreement. The Court held a fairness hearing on May 6, 2014. There are no objections to the agreement. For the following reasons, the Court will certify the collective and class actions, approve the settlement agreement, and grant Class Counsel's attorneys' fees request.

**I.     BACKGROUND**

    **A.     Factual Allegations**

James Young worked as a security guard in the entertainment division of Tri County Security Agency, Inc. ("Tri County") during various times from approximately 2008 to approximately October 2012. (First Am. Compl. ¶ 10.) During the relevant time period, Tri County employed at least twenty-seven security guards in the entertainment division, paying them on an hourly basis. (*Id*. ¶ 9.) These security guards often worked over forty hours per week and are not exempt from the

overtime pay requirements of FLSA and PMWA. (*Id.* ¶¶ 11-12.)

Although Young sometimes worked seventy to eighty hours a week, he was paid at his regular rate for all hours worked. (*Id.* ¶¶ 13-15.) Additionally, Young and other security officers were required to report to their posts, in uniform, at least ten minutes prior to the start of their shift. (*Id.* ¶ 17.) The security officers were not paid for this additional work. (*Id.* ¶¶ 18-19.)

Young brought a collective action under FLSA on behalf of "[a]ll Security Guards employed by Defendant within its Entertainment Division during any workweek since October 9, 2010." (*Id.* ¶ 21.) Plaintiff also brought a class action under PMWA on behalf of the same purported class. (*Id.* ¶ 23.)

  **B.**  **Settlement Agreement**

The settlement class is comprised of "[a]ll Security Guards employed by Defendant within its Entertainment Division during any workweek between October 9, 2010 and October 28, 2013." (Settlement Agreement ¶ 2.) The Settlement Agreement provides that Tri County will settle the litigation for $57,000, including $40,000 in unpaid wages to participating class members, an extra payment of $2,000 to Young, and $15,000 to Class Counsel. (*Id.* ¶ 4.) The participating class members agree to release Tri County from all claims arising out of Tri County's alleged non-payment of wages from "the beginning of time through and including October 28, 2013." (*Id.* ¶ 5.) The Settlement Agreement includes a table which lists the settlement amounts of the individual class members. Young receives an incentive award of $2,000 in exchange for a general release of all waivable claims arising out of his employment. (*Id.* ¶ 12.)

## II. DISCUSSION

Approval of the Settlement Agreement will dispose of Plaintiff's FLSA collective action and his PMWA class action. Collective actions are permitted under FLSA: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). When faced with a proposed settlement of a FLSA claim, "the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *In re Chickie's & Pete's Wage and Hour Litig.*. Civ. A. No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014).

The PMWA claim was brought as a class action and therefore requires the Court to apply Rule 23 of the Federal Rules of Civil Procedure before that claim can be settled. Although this Court granted preliminary approval of the Settlement Agreement, there must still be a final determination as to whether to certify the class and grant final approval of the Settlement Agreement. *See In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 797 (3d Cir. 1995).

### A. Collective Action Certification

For a collective action to proceed under § 216(b) of FLSA, two requirements must be met: (1) all members of the collective action must affirmatively consent to join; and (2) all members of the collective action must be "similarly situated." *Chemi v. Champion Mortg.*, Civ. A. No. 05-1238, 2009 WL 1470429, at *10 (D.N.J. May 26, 2009). The first requirement is met in this case as evidenced by the list of participants in the collective action. As will be described below, the members of the collective action are similarly situated, thus satisfying the second requirement. The Court

concludes that, for the purposes of settlement, the members of the FLSA collective action who have agreed to settle this litigation satisfy the requirements for collective action certification.

**B.     Class Action Certification**

Federal Rule of Civil Procedure 23(a) mandates that four threshold requirements be met for a class to be certified: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also In re Life USA Holding Inc.*, 242 F.3d 136, 143 (3d Cir. 2001). These requirements are referred to as numerosity, commonality, typicality, and adequacy of representation. Additionally, a proposed class must also meet the requirements of one of the three sub-parts of Rule 23(b). *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527 (3d Cir. 2004).

        *1.     Rule 23(a) requirements*

            *a.     Numerosity*

The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001). While this requirement does not contemplate a specific number, a potential class exceeding forty members is generally considered sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *see also Servanti v. Bucks Technical High Sch.*, 225 F.R.D. 159, 165 (E.D. Pa. 2004) (certifying a settlement class that contained at least forty-seven potential members).

Here, the putative class has twenty-seven members. Although this is small, a class of this size

can meet the numerosity requirement. *See McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673-74 (W.D. Wash. 2010) (finding numerosity requirement met for class of twenty-seven); *see also Lanning v. SE Pa. Transp. Auth.*, 176 F.R.D. 132, 147-48 (E.D. Pa. 1997) (finding that class of twenty-two satisfied numerosity requirement). Additionally, because individual class members are suing for relatively small sums, joinder will be impracticable. Therefore, the numerosity requirement is met.

       b.  *Commonality*

Commonality requires the plaintiff to show that class members suffered a common injury. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). However, the commonality requirement does not mandate identical claims or facts among class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012). A single common question of law or fact will suffice to satisfy the commonality requirement. *Id*. Commonality is more easily established when plaintiffs assert an economic, as opposed to a physical, injury because few if any individual proof issues are expected to arise. *In re Warfarin*, 391 F.3d at 527.

Plaintiff claims that all class members were subject to the same common practice: failure to pay overtime to security guards. Based on Young's allegations, Tri County's policy treated these class members identically and the class members share a common injury. Moreover, the damages here are strictly economic and the parties have not raised individual proof issues that may arise. Thus, the commonality requirement is met.

       c.  *Typicality*

The concepts of typicality and commonality are closely related and often merge. *See Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Typicality, however, examines "whether the named

plaintiff's individual circumstances are markedly different [from those of unnamed class members] or . . . the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (*quoting Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)); *see also Baby Neal*, 43 F.3d at 57-58. When considering typicality, courts should address the following considerations: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class. *Marcus*, 687 F.3d at 598. Typicality does not require that putative class members share identical claims. *In re Warfarin*, 391 F.3d at 531-32. Instead, "[t]he heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims." *Seidman v. Am. Mobile Sys., Inc.*, 157 F.R.D. 354, 360 (E.D. Pa. 1984). If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class. *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992).

      The typicality requirement is easily met here. Young's claims share the same underlying factual scenario and rely on the same legal theory as the claims of the putative class. Specifically, Young and the individual class members worked for Defendant in the same division and all base their claims on the failure to pay overtime to similarly situated employees. Moreover, Young's claims are not subject to a unique defense, and his interests and incentives are aligned with those of

the individual class members.

### d. Adequacy of representation

This requirement ensures that the named plaintiffs fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Court must be satisfied that: (a) plaintiffs' attorneys are qualified, experienced, and generally able to conduct the litigation; and (b) the interests of the named representatives are not antagonistic to those of other class members. *See In re Warfarin*, 391 F.3d at 532; *see also Gen. Motors*, 55 F.3d at 800-01.

Class Counsel discussed their qualifications in their motion for preliminary approval of the settlement. The law firm of Winebrake & Santillo has particular experience with wage and overtime rights litigation. (Pl.'s Unopposed Mot. for Prelim. Approval of the Class Action Settlement Ex. A [Santillo Decl.] ¶ 3.) The firm has been involved in dozen of class action lawsuits in this area of law, and the lawyers involved in this lawsuit have significant experience and have enjoyed great success in the field. (*See id.* ¶ 4 & Santillo Decl. Ex. 2 [Attorney Bios].) Additionally, the interests of the named representatives are not antagonistic to those of other class members. Therefore, this prong is satisfied.

### 2. Rule 23(b)(3) requirements

In addition to meeting the four requirements of Rule 23(a), a proposed class must also qualify under one of the three sub-parts of Rule 23(b). *In re Warfarin*, 391 F.3d at 527. Young seeks to maintain this class action under Rule 23(b)(3), which allows a class action to proceed if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*a.     Common questions of law or fact predominate*

"Predominance is normally satisfied when plaintiffs have alleged a common course of conduct on the part of the defendant." *In re Janney Montgomery Scott LLC Fin. Consult. Litig.*, Civ. A. No. 06–3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009). Plaintiff has alleged a common course of conduct by Defendant. The dominant question of law is whether Defendant's failure to pay overtime and failure to compensate employees for work required to be performed prior to the start of their shifts violated federal and state wage laws. Furthermore, Plaintiff notes that Defendant's time records and payroll data are maintained in a standard format and damages were calculated based on a standard analysis. (Pl.'s Mem. of Law in Supp. of His Unopposed Mot. for Prelim. Approval of the Class Action Settlement [Pl.'s Mem. for Prelim. Approval] at 13.) This requirement is met.

*b.     Class action is superior to other methods*

According to Rule 23(b)(3), the factors to consider in evaluating superiority are: (1) class members' interests in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun; (3) the desirability of concentrating the litigation of the claims in a particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3). These factors favor maintenance of a class action here. It is more efficient to vindicate the interests of the individual class members in one lawsuit rather than twenty-seven separate actions. Moreover, because of the relatively small amount of damages per individual, individual class members are unlikely to bring individual claims. This Court is an appropriate forum, as it possesses subject matter jurisdiction over the claims and personal jurisdiction over the parties. The last factor, manageability, need not be considered since the settlement will avoid trial. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether

trial would present intractable management problems, see Rule 23(b)(3)(D), is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial."). Accordingly, a class action is superior to other methods of litigating these claims.

### C. Notice to the Class

Class members must "have certain due process protections in order to be bound by a class settlement agreement." *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005). To satisfy the due process requirements, class members must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The parties' agreement provided that "[w]ithin two (2) business days after the Preliminary Approval Date, Defendant's Counsel shall provide Class Counsel with each Class Member's last known address, as reflected in Defendant's company records." (Settlement Agreement ¶ 7.) Class Counsel was required to mail notice to all Class Members and make "all good faith efforts to obtain updated addresses and promptly re-mail" notice should any notices be returned without a forwarding address. (*Id.*)

Notice of the Settlement Agreement, including notice of each class member's individual gross recovery under the agreement, was mailed to the individual class members. (Pl.'s Mem. of Law in Supp. of His Unopposed Mot. for Final Approval of the Class Action Settlement [Pl.'s Mem.] at 5-6.) To date, no class member has sought exclusion from the class or objected to the settlement. (*Id.* at 6.) The Court has reviewed the notice to the class and concludes that Rule 23's notice requirement is satisfied.

### D. Fairness of the Settlement

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[T]he district court acts as a fiduciary who must serve as a guardian of the rights of absent class members. . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate." *Gen. Motors*, 55 F.3d at 785. The law looks favorably upon class action settlements to conserve scarce judicial resources. *Gen. Motors*, 55 F.3d at 784. However, "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *see also Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983).

The decision of whether a settlement should be approved as fair, reasonable, and adequate is guided by the nine-factor test enunciated by the Third Circuit in *Girsh v. Jepson*. The *Girsh* test directs district courts to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. Although the burden rests with the settling parties to demonstrate that the *Girsh* factors favor settlement, an initial presumption may apply in cases, such as this, in which: "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and

(4) only a small fraction of the class objected." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 320 n.54. (3d Cir. 2011).

### 1.     *Complexity, expense, and duration of litigation*

This factor captures the monetary costs and time involved in pursuing the litigation to trial and beyond. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004); *see also Gen. Motors*, 55 F.3d at 812. Absent settlement, additional discovery and motion practice would protract this litigation. Furthermore, because the damages recoverable by individual class members is not large, this case could cost more to litigate than a realistic damage award if the case failed to settle early. This factor favors settlement.

### 2.     *Reaction of the class to the settlement*

This factor asks whether the class supports the settlement. *In re Warfarin*, 391 F.3d at 536; *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998). Silence from the class is generally presumed to indicate agreement with the settlement terms. *Gen. Motors*, 55 F.3d at 812 (*citing Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).

There are no objections to this settlement, nor are there any class members seeking exclusion from the settlement. Additionally, no class members appeared at the fairness hearing to object to the proposed settlement. The Court concludes that this factor weighs heavily in favor of final approval.

### 3.     *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor considers the current stage of the proceedings and the lawyers' knowledge of the strengths and weaknesses of their case. "Through this lens, courts can determine whether counsel has an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813.

During discovery, Defendant provided Plaintiff's counsel with payroll data and Excel spreadsheets summarizing damages. (Pl.'s Mem. at 2.) Plaintiff's counsel deposed Tri County's owner and president. (*Id.* at 3.) The Court is satisfied that counsel was sufficiently informed of the facts and issues surrounding this litigation such that this factor weighs in favor of settlement.

### 4. *The risks of establishing liability and damages*

The risk of establishing damages is often considered in conjunction with the risk of establishing liability. *See Lenahan v. Sears, Roebuck & Co.*, Civ. A. No. 02–45, 2006 WL 2085282, at *14 (D.N.J. July 24, 2006). The fourth and fifth *Girsh* factors "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. Based on this settlement, all of the individual class members will receive all of their alleged unpaid overtime wages. Additionally, the settlement provides for an enhancement for potential off-the-clock claims. These factors weigh heavily in favor of approving the settlement because the agreement fully compensates individual class members and thus eliminates the risk of establishing damages.

### 5. *The risks of maintaining the class through trial*

A court may decertify or modify a class at any time during the litigation should the class prove to be unmanageable. *See In re Linerboard*, 321 F. Supp. 2d at 631 (*citing In re School Asbestos Litig.*, 789 F.2d 996, 1011 (3d Cir. 1986)). This factor is neutral. While the possibility of a protracted battle over class certification is possible, this is a class of modest size and it is unlikely that the Court would revisit a decision on class certification.

### 6. *The ability of defendants to withstand a greater judgement*

This factor requires the Court to evaluate whether the Defendants "could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001). This factor is irrelevant here because individual class members are receiving full compensation.

> 7. *The range of reasonableness of the settlement fund in light of the best possible recovery and in light of the attendant risks of litigation*

The last two *Girsh* factors assess "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322. In conjunction, these two factors ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. This factor favors approving the settlement because class members are getting a favorable settlement that will fully compensate them.

**E.     Incentive Award**

Payment awards to class representatives lie within the discretion of the trial court and may be provided as a reward for the benefit visited on the class. *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995). Factors that courts consider in deciding to grant incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class. *Id.* (*citing In re U.S. Biosci. Secur. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994)); *see also Godshall v. The Franklin Mint Co.*, Civ. A. No. 01-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004).

The modest incentive award for Young is reasonable. Class Counsel states that Young made "significant contributions . . . to this litigation." (Pl.'s Mem. at 20.) He worked with Class Counsel to draft the pleadings, reviewed the agreement, and is providing a general release as part of the settlement. (*Id*.) Accordingly, the $2000 incentive award to Young is approved.

**F.     Attorneys' Fees**

Class Counsel requests $14,150.07 in attorneys' fees and $849.93 in costs. These requested attorneys' fees and costs, totaling $15,000, represent 24.8% of the total sum that the Settlement Agreement requires Defendant to pay.

*1.     Overview*

Under the Federal Rules of Civil Procedure, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). This Court must conduct a "thorough judicial review" of Class Counsel's request for attorneys' fees. *See In re Prudential*, 148 F.3d at 333; *Gen. Motors*, 55 F.3d at 819.

Courts in the Third Circuit employ one of two methods for calculating attorneys' fees in the class action context. The percentage-of-recovery method awards class counsel a fixed portion of the settlement fund and is generally used in common fund cases. *In re Diet Drugs Prod. Liab. Litig,*, 582 F.3d 524, 540 (3d Cir. 2009). The lodestar method, normally applied in statutory fee shifting cases, multiplies the number of hours counsel reasonably worked by a reasonable hourly rate. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). Because this is a common fund case, the Court will employ the percentage-of-recovery method to determine the amount of attorneys' fees it will award Class Counsel. As suggested by the Third Circuit, the Court will then apply a lodestar

cross-check to ensure the reasonableness of the award. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).

        2.      *Percentage-of-Recovery Method*

District courts in the Third Circuit have been directed to consider seven factors in determining the reasonableness of a fee petition when calculating the percentage-of-recovery method. Those factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter*, 223 F.3d at 195 n.1.

        a.      *The size of the fund created and the number of persons benefitted*

"As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp., Derivative Action Litig.*, 232 F.Supp.2d 327, 337 (D. N.J. 2002). This inverse relationship is predicated on the assumption that often the increase in the size of a recovery is merely due to the size of the class and not the efforts of counsel. *In re Prudential*, 148 F.3d at 339. The Court finds the 24.8% award in this case reasonable in light of the settlement fund's size and does not believe it results in an unmerited windfall for the attorneys.

        b.      *The presence or absence of substantial objections by members of the class*

As previously noted, no class members have objected to any component of the settlement in this matter, including the attorneys' fees request. "The absence of large numbers of objections mitigates against reducing fee awards." *In re Cendant Corp.*, 232 F. Supp. 2d at 337 (citations omitted). This factor thus favors awarding the requested fees.

### c.     *The skill and efficiency of the attorneys involved*

The quality of representation in a case can be "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc., Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (*quoting In re Computron Software, Inc., Secs. Litig.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)).

The Court has already noted the skill of Class Counsel. It is hard to argue with the results achieved here. Individual class members will be fully compensated, and that result was reached early in the process. This factor thus weighs heavily in favor of the attorneys' fees requested.

### d.     *The complexity and duration of the litigation*

This factor is neutral. From the Court's perspective, this litigation does not appear overly complicated; rather, it presents claims often seen in wage and hour cases. Moreover, because this settlement was achieved early in the litigation, this litigation is of a relatively recent vintage.

### e.     *The risk of nonpayment*

This factor allows courts to award higher attorneys' fees for riskier litigations. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 219 (E.D. Pa. 2011) Class counsel argues that it accepted this case on "a pure contingency basis." (Pl.'s Mem. at 14.) While that may be true, Class Counsel also notes that the amount at stake for the individual members of the class was not great. (Pl.'s Mem. for Prelim. Approval at 2 ("All parties recognized that Defendant is not a large employer and that the recoverable damages would be relatively 'small' compared to other class action lawsuits.").) The lawyers took the risk of walking away empty handed, but the monetary risk was not

great. This factor weighs slightly in favor of approving the fee request.

### f. *The amount of time devoted to the case by class counsel*

Class Counsel has spent 44.9 hours on this litigation to date. That number does not seem significant, but that low number represents the parties' ability to quickly reach an agreement. This factor is neutral.

### g. *Awards in similar cases*

Class Counsel did not direct this Court to attorneys' awards in similar FLSA actions. However, in the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund. *See Bredbenner v. Liberty Travel, Inc.*, Civ. A. Nos. 09–905, 09–1248, 09–4587, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011). Class counsel's request here is well within that range.

## H. Lodestar Cross-Check

"The lodestar crosscheck is intended to gauge the reasonableness of the attorneys' fee award as a whole." *Milliron v. T-Mobile, USA, Inc.*, 423 F. App'x 131, 136 (3d Cir. 2011). In performing the lodestar cross-check, the court multiplies "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The Court may then apply a multiplier to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Id*. at 305–06. If the difference between the lodestar and percentage-of-recovery "is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Id*. at 306. However, because the cross-check is not the primary analysis in common fund cases, it does not require "mathematical precision [ ] or bean-counting." *Id*. In evaluating the hours reasonably spent on the

17

case, the Court does not have to "review actual billing records" but can "rel[y] on summaries submitted by the attorneys." *See id*.

According to the Santillo declaration, two partners and an associate worked on this matter. Peter Winebrake, the managing partner, worked on this matter for 1.4 hours at a rate of $600 an hour. (Santillo Decl. ¶ 26.) The associate, Mark Gottesfeld, spent .3 hours on this matter at a rate of $275 an hour. (*Id*.) The bulk of the hours worked were expended by Santillo, who spent 43.2 hours at a rate of $400 an hour. (*Id*.) Class Counsel submitted redacted billing records as well. Combining these figures, the Court arrives at a lodestar of $18,202.50, which is more than Class Counsel is requesting. Class Counsel has also submitted declarations in support of the hourly rates for the attorneys in this matter. From the record before the Court, it is clear that the lodestar cross-check confirms the reasonableness of the attorneys' fee award in this case.

### III. CONCLUSION

The Court sees no reason to stand in the way of this settlement, which affords individual class members full relief. Therefore, the Court certifies the class, approves the notice, and finds the settlement fair, adequate, and reasonable. The Court also approves the incentive award to the named Plaintiff and awards attorneys' fees and costs in the amount of $15,000. An Order consistent with this Memorandum will be docketed separately.